## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BILLY BINGHAM,                         CASE NO. 4:20-cv-12686

    *Plaintiff*,                    HON. GEORGE CARAM STEEH
*v.*                                   DISTRICT JUDGE

AMY COFFELT,                           PATRICIA T. MORRIS
                                       MAGISTRATE JUDGE

    *Defendant*.

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 35) AND GRANT DEFENDANT COFFELT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 37)

## I.  RECOMMENDATION

For the following reasons, it is **RECOMMENDED** that Plaintiff's August 29, 2022 motion for summary judgment (ECF No. 35) be **DENIED** and that Defendant Coffelt's August 30, 2022 motion for summary judgment (ECF No. 37) be **GRANTED**.

## II.  REPORT

### A.  Factual and Procedural Background

### 1.  The Amended Complaint

Plaintiff, Billy Bingham, is a prisoner in the custody of the Michigan

1

Department of Corrections ("MDOC") currently housed at the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan.  His amended complaint, filed November 4, 2021, alleges that Defendant Amy Coffelt, the food service director at JCF, refused to provide him with medically necessary meals.[1] (ECF No. 28, PageID.174).

The Amended Complaint contains the following allegations.  Plaintiff was diagnosed with cancer in September 2017.  (ECF No. 28, PageID.174, ¶ 9).  Due to chemotherapy treatment, he experienced nausea, vomiting, and weight loss and was prescribed a "chemo diet."  (*Id.*, ¶ 9).  He received the chemo diet until January 2020, when the meals "were abruptly terminated."  (*Id.*, ¶ 10).  On February 3, 2020, he filed a grievance addressing Coffelt's termination of the chemo diet.  (*Id.* at PageID.175, ¶ 11).  On February 10, 2020, "it was determined" that a low sodium diet, would benefit Plaintiff.  (*Id.*, ¶ 12).  However, one day after the new plan was implemented, the special meals were terminated.  (*Id.*, ¶¶ 13-14).  The same day, in response to Plaintiff's complaint, Coffelt stated that she emailed non-defendant Dr. Herro to change Plaintiff's diet.  (*Id.*, ¶ 16).  In response to his second grievance, Plaintiff was told that Coffelt had emailed healthcare staff regarding Plaintiff's diet because the chemo diet was no longer available.  (*Id.*, ¶ 21).  During the same period,

---

[1] On November 4, 2021, Plaintiff stipulated to the dismissal of the other defendant Timothy Schubring.  (ECF No. 27).

2

the low sodium diet was reinstated then discontinued. (*Id*. at PageID.176, ¶ 22). On March 5, 2020, the low sodium diet was once again reinstated at the order of Dr. Herro but then discontinued permanently on March 15, 2020. (*Id*., ¶ 28). On July 13, 2020, Plaintiff told Dr. Herro that he was no longer receiving low sodium meals to which Dr. Herro responded that "'Coffelt is your problem.'" (*Id*., ¶¶ 29-30). In response to his September 2020 medical kite, Plaintiff was told that the medical provider did not have the authority to prescribe a diet meal and that he would "'benefit from a high protein'" diet. (*Id*. at PageID.176-77, ¶¶ 31-32). As of the date of the amended complaint, Plaintiff has not been provided with a diet "in accordance with the prescribed medical orders." (*Id*. at PageID.77, ¶ 33).

Plaintiff alleges that Coffelt acted "deliberately and indifferently" to his medical needs in violation of the Eighth Amendment. (*Id*., ¶ 35). He also alleges that Coffelt violated his due process rights under the Fourteenth Amendment by "interfering with medical orders" for a low sodium diet and for failing to follow MDOC policy regarding therapeutic dietary services. (*Id*. at PageID.178, ¶ 43). He asks for compensatory damages and injunctive relief requiring Coffelt to "take whatever actions will ensure the lawful continuation" of his prescribed meals "unless medically terminated." (*Id*. at PageID.179).

### 2. Defendant Coffelt's Declaration

3

Defendant Coffelt's Declaration is appended to her motion as Exhibit B. She states that during the relevant time period, she was the Food Service Director at JCF. (ECF No. 37, PageID.308, ¶ 3). She states that in 2019, the MDOC Diet Manual was updated to eliminate what had been known as the "chemo diet." (*Id.*, ¶ 4). She states further that "prescribed diets must be entered into the Corrections Offender Management System" ("COMS"), and tickets are printed for prisoners to receive their prescribed diets. (*Id.*, ¶ 5). After the changes to the Manual, the chemo diet was not available and could not be printed on the tickets. (*Id.*) In addition, COMS would not allow the input of a low-sodium diet ("2gm Na") in conjunction with morning, afternoon, and evening snacks, because that "diet/snack combination did not comply with MDOC approved diets." (*Id.* at PageID.308-309, ¶ 5).

Coffelt states that one of her duties was to forward non-standard diet orders to a Bureau of Health Care Services ("BHCS") Registered Dietician ("RD"), and that on September 24, 2019, she emailed RD Pamela Sanders a list of 24 prisoners with non-conforming diets, including Plaintiff. (*Id.* at PageID.309, ¶ 6). On January 29, 2020, all food service directors in the MDOC Jackson region received an emailed list of approved diets. (*Id.*, ¶ 7). The list did not include a chemo diet, and three daily snacks were not listed as available with the 2gm Na diet. (*Id.*)

Coffelt states that on February 13, 2020, she emailed RD Patricia Willard and Dr. Herro, informing them that the recently prescribed medical diet/snack

combination needed to be reassessed as it did not comply with the COMS. (*Id.*, ¶ 8). Willard replied that if Dr. Herro did not adjust Plaintiff's diet to "an approved diet," Coffelt needed to resend the request to Dr. Herro and "cc" RD Pam Sanders. (*Id.* at PageID.310, ¶ 8). On February 14, 2020, Coffelt did that, and on February 18, 2020, RD Sanders responded that she adjusted Plaintiff's diet, "removing the 2gm Na diet while leaving the three snacks." (*Id.*, ¶ 9). JCF Facility Manager Timothy Schubring confirmed that Plaintiff was placed on a standard diet with three supplemental snacks, "which was found to meet Bingham's medical needs." This information was confirmed by RD Willard. (*Id.*, ¶ 10).

Coffelt states that as Food Service Director, she "had no ability to prescribe, alter, or terminate therapeutic diet orders. That ability lies solely with health care professionals. As such, [she] never terminated a diet that was prescribed to Bingham." (*Id.* at PageID.311, ¶ 11). She states, "The only thing I did in this matter was follow policy, and forward non-conforming diet orders to the proper health professionals for review." (*Id.*)

Exhibit D to Coffelt's motion is the Declaration of RD Pamela Sanders. (*Id.* at PageID.330). She states that in 2019, several changes were made to the MDOC Diet Manual, including elimination of the chemo diet and a requirement that the 2gm Na diet could only be combined with one snack, not a morning, afternoon, and evening snack. (*Id.* at PageID.331, ¶ 4). She states that under MDOC policy, Food

Service Directors are required to forward non-standard diets (i.e., those that are not compliant with COMS) to BHCS Registered Dieticians for review.  (*Id.*, ¶ 5). On February 14, 2020, Coffelt emailed both her and Dr. Herro, informing them that the diet that Dr. Herro had prescribed was not COMS compliant.  (*Id.* at PageID.331-332, ¶ 6).  On February 18, 2020, Sanders responded that she had adjusted Plaintiff's diet so that he would be assigned to the regular MDOC diet line and would receive three supplemental snacks. (*Id.* at PageID.332, ¶ 7).  Sanders states that Coffelt, as a Food Service Director, "had no ability to prescribe, alter, or terminate therapeutic diet orders. That ability lies solely with health care professionals." (*Id.*, ¶ 8).

Defendant's Exhibit E contains Plaintiff's medical records. On February 10, 2020, Dr. Herra ordered that Plaintiff receive a 2gm Na diet with morning, afternoon, and evening snacks for six months, after which the diet would be reassessed. (*Id.* at PageID.337, 339).  That order was continued following a patient visit on March 5, 2020.  (*Id.* at PageID.343). Dr. Herra stated that Plaintiff was "doing well" in terms of lymphoma and should continue "the current regimen as recommended by oncology." (*Id.* at PageID.346). Dr. Herra saw Plaintiff again on March 31, 2020, at which time Plaintiff had no complaints, and admitted to getting three snack bags a day. (*Id.* at PageID.354).  On August 6, 2020, RD Sanders ordered that Plaintiff receive morning, afternoon, and evening snack bags, but with no reference to the 2gm Na diet.  (*Id.* at PageID.356).  The order was co-signed by Nurse Practitioner

Dione Wright. (*Id*. at PageID.356-357). In response to Plaintiff's medical kite on August 24, 2020, in which he requested the 2gm Na diet with the evening snack only, RD Sanders replied, "Your snacks were already renewed. The ACMO [Acting Chief Medical Officer] denied your 2gm Na diet was medically necessary." (*Id*. at PageID.358).

On September 5, 2020, in response to Plaintiff's medical kite regarding his request for a low sodium diet, Registered Nurse ("RN") Crystal Brown replied, "The request for a 2gm sodium diet was denied by Lansing. You do not have a heart issue that requires a low sodium diet. If you are concerned about sodium, make conscious choices thru the chow line and when purchasing items from the store." (*Id*. at PageID.359). The following day, September 6, 2020, RN Brown responded to another kite from Plaintiff, in which he asserted that a low sodium diet was necessary because he was receiving chemotherapy. RN Brown responded:

> There is no therapeutic diet for anyone on chemo. It is just encouraged that you eat protein. Lansing denied a 2 gm low sodium diet because it is not medically necessary for chemo treatment. You do not have heart issues that would require that diet. The provider that was giving you that diet did not have the authority to do so that is why it has been taken away every time he issued it.

(*Id*. at PageID.360).

### 3. Plaintiff's Declaration

Plaintiff submitted his own Declaration in support of his motion for summary judgment, stating that On February 12, 2020, he spoke with Coffelt about his

grievance requesting reinstatement of his diet order, and that Coffelt replied that she had emailed Dr. Herro regarding his diet. (ECF No. 35, PageID.231, ¶ 11).  He states that in response to his second grievance of February 17, 2020, he was informed that "[the] COMS system was recently updated with all the statewide standard diets and 'Chemo diet' is not on the list." (*Id*., ¶ 12).  He states that "Ms. Coffelt is not medically trained to determine the need for medically ordered diet meals." (*Id*., ¶ 17).  He casts blame on the COMS system, stating, "The reason for the denial of my prescribed meals was due to COMS, not being a medical professional, not allowing three snack bags with the 2 mg Na core diet." (*Id*. at PageID.232, 21).

Plaintiff has also submitted Coffelt's interrogatory responses, in which she states, "Per MDOC PD 04.07.101, the menus for therapeutic diets are written by BHCS Registered Dieticians in accordance with the MDOC Diet Manual." (*Id*. at PageID.245).

## B.    Legal Standard

Defendant Coffelt and Plaintiff both move for summary judgment under Fed. R. Civ. P. 56.

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such a motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a *pro se* party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat

a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

## C.   ANALYSIS

### 1. Defendant Coffelt's Motion for Summary Judgment (ECF No. 37)

The plaintiff in a § 1983 case must show that a named defendant was personally involved in the allegations underlying the complaint. *Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 419-20 (6th Cir. 1984). Moreover, being aware of an inmate's complaint and failing to take action does not create liability under § 1983. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988); *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Defendant Coffelt affirmatively states in her Declaration that she could not "prescribe, alter, or terminate therapeutic diet orders," and that only health care professionals had the authority to do so. She states that she "never terminated a diet that was prescribed to Bingham." (ECF No. 37, PageID.311). In her interrogatory answers, Coffelt referenced MDOC's PD 04.07.101, which provides that "therapeutic diets are written by BHCS Registered Dieticians in accordance with the MDOC Diet Manual." (ECF No. 35, PageID.245).

In addition, RD Pamela Sanders, a member of the Bureau of Health Care Services, states in her Declaration that as a Food Service Director, Coffelt "had no ability to prescribe, alter, or terminate therapeutic diet orders. That ability lies solely with health care professionals." (*Id*. at PageID.332, ¶ 8). Sanders also states that on February 18, 2020, she (not Coffelt) adjusted Plaintiff's diet, and the medical records show that on August 6, 2020, Sanders (not Coffelt) ordered that Plaintiff receive morning, afternoon, and evening snack bags, but with no reference to the 2gm Na

11

diet. (*Id.* at PageID.332, ¶ 7, PageID.356-357).  The order was co-signed by a Nurse Practitioner. (*Id.* at PageID.356-357).  Sanders stated that "[t]he ACMO [not Coffelt] denied your 2 gm Na diet was medically necessary." (*Id.* at PageID.358).  On September 6, 2020, RN Crystal Brown informed Plaintiff that there was no "therapeutic diet" for patients on chemo, and that "Lansing [not Coffelt] denied a 2 gm low sodium diet because it is not medically necessary for chemo treatment." (*Id.* at PageID.360).

Coffert, then, had no authority to change or adjust Plaintiff's therapeutic diet, and the only action she could take was to forward non-standard diet orders to a BHCS Registered Dietician.  She did exactly that on September 24, 2019, when she emailed RD Sanders a list of 24 prisoners with non-conforming diets, including Plaintiff. (*Id.* at PageID.309). She did that again on February 13, 2020, when she emailed RD Patricia Willard and Dr. Herro, informing them that the recently prescribed medical diet/snack combination needed to be reassessed as it was not COMS compliant, and again on the following day when, on Sanders' request, she resent the request to Dr. Herro with a cc to Sanders. (*Id.* at PageID.309-310).

What Coffelt did *not* do was order modifications to Plaintiff's diet or deny Plaintiff's request regarding his diet.  And Plaintiff's apparent claim that Coffelt violated his Eighth Amendment rights by not reinstating a low sodium diet that had been denied by dieticians and health care authorities is puzzling, since he himself

correctly asserts in his Declaration that "Ms. Coffelt is not medically trained to determine the need for medically ordered diet meals." (ECF No. 35, PageID.231). In other words, he suggests that Coffelt violated his rights by refraining from doing something that she was not qualified to do.   Plaintiff failure to show that Coffelt had the authority to change his diet plan, without more, defeats the constitutional claims against her.  *See Martin v. Kazulkina*, No. 12-CV-14286, 2017 WL 971706, at *11 (E.D. Mich. Feb. 21, 2017), *report and recommendation adopted,* No. 12-CV-14286, 2017 WL 958081 at *11 (E.D. Mich. Mar. 13, 2017) (No liability for defendant lacking authority to order the allegedly unconstitutional involuntary hospitalization and use of psychotropic drugs).   In any event, a defendant's failure to take action does not create § 1983 liability.  *Poe*, 853 F.2d at 429; *Shehee*, 199 F.3d at 300. Because Coffelt had no personal involvement in Plaintiff's alleged deliberate indifference clam, she is entitled to summary judgment.  Given her lack of any involvement, it is not necessary to address the question of whether sufficient evidence has been presented to support a substantive Eighth Amendment claim.  *See Moore v. Corizon Health, Inc.*, No. 18-13845, 2020 WL 7233402, at *3, n.4 (E.D. Mich. July 31, 2020) (Whalen, M.J.), *report and recommendation adopted,* No. 18-CV-13845, 2020 WL 7225727 (E.D. Mich. Dec. 8, 2020) (Leitman, J.) ("[B]ecause Defendant Campbell is clearly entitled to dismissal on the basis of there being no showing of her personal involvement, it is not necessary to discuss her alternative

argument that there is insufficient evidence to support a substantive Eighth Amendment violation….").[2]

Plaintiff has also named Defendant Coffelt in her official capacity, seeking prospective injunctive relief regarding his diet.[3] The Eleventh Amendment does not bar suits for prospective injunctive relief against state officials for constitutional violations. *Smith v. Oakland Cnty. Cir. Ct.*, 344 F. Supp. 2d 1030, 1056 (E.D. Mich. 2004) (citing *Ex Parte Young,* 209 U.S. 123 (1908); *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 & n. 10 (1989). However, while a claim for prospective injunctive relief is not necessarily foreclosed by Eleventh Amendment immunity, "the state officer sued must, 'by virtue of his office, ha[ve] some connection' with the unconstitutional act or conduct complained of." *Luckey v. Harris*, 860 F.2d 1012, 1015–16 (11th Cir. 1988) (quoting *Ex Parte Young*, 209 U.S. at157). *See also Floyd v. Cnty. of Kent*, 454 F. App'x 493, 498–99, 2012 WL 29207, at *5 (6th Cir. 2012) ("The state official sued, however, must have, by virtue of the office, some

---

[2] In any event, at most, Plaintiff has shown a minor disagreement between Dr. Herra and other MDOC medical professionals as to the efficacy of a low sodium diet for chemotherapy patients. This is insufficient to state a deliberate indifference claim. *See Acord v. Brown,* 43 F.3d 1471 (6th Cir.1994) ("[A] § 1983 claim based on the Eighth Amendment is not present when a doctor disagrees with the professional judgment of another doctor, as there are several ways to treat illness.").

[3] Plaintiff also states in his Declaration that he "filed this action seeking relief from Ms. Coffelt, arguing through her official and personal capacity, using COMS has denied me the ability to eat a prescribed diet meal." (ECF No. 35, PageID.231).

connection with the alleged unconstitutional act or conduct of which the plaintiff complains.") (citing *Luckey*); *Austin v. Kasich*, No. 2:12-CV-983, 2013 WL 1324354, at *3 (S.D. Ohio Mar. 29, 2013) ("the *Ex parte Young* fiction does not apply unless the officer sued has 'some connection with the enforcement of the act.'") (quoting *Ex parte Young*, 209 U.S. at 157).

In *Castellon v. Hinkle*, 2022 WL 3139606 (S.D. Ohio Aug. 5, 2022), the plaintiff challenged the prisons' mail policies, which he claimed interfered with his First Amendment right to access the courts.  The Court construed the complaint to name the defendant, Hinkle, in his official capacity, and to seek injunctive relief.  The Court dismissed this official capacity claim against Hinkle, stating:

> To the extent that Plaintiff seeks injunctive relief directing that his mail be shipped within 24 hours of submission, he fails to allege any facts from which the Court could conclude that Defendant Hinkle has any responsibility relating to either NCI's mail processing, or, more broadly, its mail policies . . . . Stated another way, Plaintiff fails to articulate what specific act by Defendant Hinkle he seeks to enjoin as unconstitutional.

*Id.* at *5.

Likewise here, Plaintiff has offered no evidence that Defendant Coffelt has any connection to the application or enforcement of MDOC policies concerning medical diets. On this basis, his official capacity claim must be dismissed.

## 2.  Plaintiff's Motion for Summary Judgment (ECF No. 35)

Plaintiff's motion for summary judgment relies on some of the same exhibits that Defendant Coffelt submitted in support of her motion, including an email from Coffelt to Dr. Herro and RD Sanders pursuant to MDOC policy, stating, "Current diet order in conjunction with the current snack bag order is not COMS compliant. Please reevaluate." (ECF No. 35, PageID.255).  Plaintiff also submits an email from John Righter, the MDOC State Administrative Manager-CFA Jackson, to Coffelt and other Food Service Directors, stating, "Good morning, attached is the list of approved CORE DIETS. Any deviation from the CORE must have <u>prior approval</u> from MDOC administration. <u>Do not deviate from this list unless approved</u>." (*Id*. at PageID.249. (Emphasis in original).  In his Declaration, Plaintiff states that when he spoke with Coffelt about the termination of his meals on February 12, 2020, she replied that she would email Dr. Herro. (*Id*. at PageID.231). This corroborates Coffert's Declaration that on February 13, 2020, she emailed RD Patricia Willard and Dr. Herro, informing them that the recently prescribed medical diet/snack combination needed to be reassessed as it was not COMS compliant (*Id*. at PageID.309), and RD Sanders' Declaration that on February 14, 2020, Coffelt emailed both her and Dr. Herro, informing them that the diet that Dr. Herro had prescribed was not COMS compliant.  (*Id*. at PageID.332, ¶ 7).  This material shows that Coffert did not have decision-making authority to modify prisoners' diets.  In fact, Plaintiff asserts that "Ms. Coffelt is not medically trained to determine the need

16

for medically ordered diet meals" (ECF No. 35, PageID.231), and that "[t]he reason for the denial of my prescribed meals was due to COMS…." (*Id.* at PageID.232).

In short, Plaintiff does not refute Defendant's exhibits, and in fact affirms that Coffert was not authorized to effect changes in his diet and was not personally involved in his claims. *See Rizzo*, 423 U.S. at 372. For the same reasons that Defendant's motion for summary judgment must be granted, Plaintiff's motion must be denied.

### III. CONCLUSION

For these reasons, I **RECOMMEND** that Plaintiff's August 29, 2022 motion for summary judgment (ECF No. 35) be **DENIED** and that Defendant Coffelt's August 30, 2022 motion for summary judgment (ECF No. 37) be **GRANTED**.

### IV. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947,

950 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  November 1, 2022

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge